UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGARET VOLLMER,<br><br>                    Plaintiff,<br><br>    -against-<br><br>INTERNATIONAL FEDERATION OF ACCOUNTANTS, RUSSELL GUTHRIE, individually, and KEVIN DANCEY, individually.<br><br>                    Defendants. | **COMPLAINT**<br><br>**Civil Action No.:**<br><br><br>Jury Trial Demanded |

MARGARET VOLLMER ("Plaintiff"), by and through her attorneys, STEVENSON MARINO LLP, as and for her Complaint against INTERNATIONAL FEDERATION OF ACCOUNTANTS ("IFAC"), RUSSELL GUTHRIE, individually ("GUTHRIE"), and KEVIN DANCEY, individually ("DANCEY"), (collectively as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## INTRODUCTION

1. Defendants terminated Plaintiff based on her age and in retaliation for complaining about age-based discrimination. This is the textbook case where an employer, ignorant to the anti-age discrimination laws and retaliation laws, repeatedly pestered Plaintiff as to when she would "retire," then used a nonsensical excuse as pretext to terminate her employment. The repeated requests to retire continued even after Plaintiff had informed Defendants that she did not plan to retire in the near future.

2. Plaintiff's life was devastated and her emotional state destroyed by Defendants' egregious and callous disregard for the law.

1

3. Plaintiff is approximately sixty-four (64) years old and worked for IFAC for twenty-two (22) years before being terminated. For the last few years prior to her termination, Defendants repeatedly pestered about when she would retire.

4. Incredibly, Plaintiff was even denied a promotion (and associated raise from such promotion-level reassignment), not because of her performance/qualifications, but because, as Defendant Guthrie stated, the "retirement issue." In other words, Defendants denied Plaintiff's promotion/raise because Defendants wanted her to retire. Seemingly, to Defendants, there's no sense in promoting/giving an employee a raise if they believe they're too old and should be retired.

5. Defendants' conduct violates all societal norms of decency – as well as violates various federal, state, and New York City laws designed to protect employees that grow old.

## NATURE OF THE CASE

6. This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the discrimination provisions of the Age Discrimination In Employment Act of 1967 ("ADEA"); (ii) the discrimination provisions of the New York State Human Rights Law ("NYSHRL"); (iii) the discrimination provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a); (iv) the anti-retaliation provisions of the ADEA; (v) the ant-relation provisions of the NYSHRL; (vi) the anti-retaliation provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107; and (x) any other claim(s) that can be inferred from the facts set forth herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about September 20, 2022, Defendants terminated Plaintiff's employment.

8. On or about October 28, 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No.: 520-2023-00632.

9. On January 25, 2023, Plaintiff requested a right to sue from the EEOC only if "the EEOC cannot complete its investigation within 180 days."

10. On January 26, 2023, the EEOC conceded that it could not conclude its investigation in 180 days when it issued the Notice of the Right To Sue.

11. Plaintiff has timely filed this Complaint within ninety days of receiving the Notice.

## JURISDICTION AND VENUE

12. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 12101, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York state and New York city law.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

14. At all relevant times herein, Plaintiff worked for Defendants in New York City, and was an "employee" entitled to protection as defined by the ADEA, NYSHRL, and NYCHRL.

15. At all relevant times herein, Defendants were and are a foreign business corporation authorized to do business in New York with a principal place of business at 529 Fifth Avenue, 6th Floor, New York, NY 10017. During the relevant period, Defendants employed over 50 employees, thereby constituting an "employer" within the meaning of the ADEA, NYSHRL, and NYCHRL.

16. Defendant Guthrie is an "employer" within the meaning of the NYSHRL and NYCHRL in that he set the terms and conditions of Plaintiff's employment, made decisions to refuse Plaintiff's promotion and to terminate Plaintiff's employment all because he harbored discriminatory animus concerning Plaintiff's age and retaliatory animus for her complaints about discrimination.

17. Defendant Dancey is an "employer" within the meaning of the NYSHRL and NYCHRL in that he set the terms and conditions of Plaintiff's employment, made decisions to refuse Plaintiff's promotion and to terminate Plaintiff's employment all because he harbored discriminatory animus concerning Plaintiff's age and retaliatory animus for her complaints about discrimination.

## BACKGROUND FACTS

18. IFAC is an organization that purports to "serve the public interest by enhancing the relevance, reputation, and value of the global accountancy profession." *See* ifac.org/who-we-are/our-purpose. IFAC purports to "support the development, adoption, and implementation of high-quality international standards" by "speak[ing] out as the voice of the global accounting profession." *See* ifac.org/what-we-do. In essence, IFAC attempts to stand up as the white knight in the international accounting world by being the pillar of ethics and standards by which other nations should look to for their accounting standards.

19. In actuality, Defendants harbor deep, unlawful discriminatory bias as a result of its misguided leadership in the form of Dancey, Chief Executive Officer, and Guthrie, Chief Financial Officer.

20. Plaintiff was and is a victim of Defendants' discriminatory animus as she, regretfully, aged over the years.

4

21.     Defendants also terminated Plaintiff in retaliation for complaining about being discriminated against based upon her age.

22.     After having served the Company for twenty-two (22) years, Defendants fired Plaintiff on September 20, 2022, at sixty-four years (64) of age, not based on performance, but simply because they wanted her to retire and in retaliation for making a complaint of discrimination.

23.     Plaintiff brings this lawsuit to rectify the discrimination and retaliation she endured because she was both: (1) denied a promotion on or after February 1, 2022 as a result of her age, and (2) was ultimately terminated as a result of her age and in retaliation for complaining about discrimination.

24.     Plaintiff also brings this lawsuit to rectify the retaliation she endured because, after being told she was denied a promotion/raise because of the "retirement issue" (i.e., Plaintiff's age), she both: (1) told Russell Guthrie ("Guthrie"), Chief Financial Officer, that such decision was ethically questionable (which she understood him to believe she alleged his decision was both unethical and illegal), and (2) complained on August 13, 2022, to Elaine Young ("Young"), Human Resources Director, concerning several issues, including the fact that Guthrie denied her promotion because he believed Plaintiff should retire. Plaintiff was fired on September 20, 2022, which was just a mere 40 days following her complaint to Human Resources.

25.     At the time of Plaintiff's termination, Plaintiff was the "Head of Finance," a senior manager position.

26.     In or around 2018 and/or 2019, Plaintiff informed Guthrie that she planned to retire in approximately 6 years or so.

27.     Guthrie communicated Plaintiff's communication regarding retirement to Dancey.

28. Subsequently, during a discussion about "succession planning" in or about 2020, Plaintiff informed Guthrie that she was no longer considering retiring because her finances changed and she wanted to work until at least seventy (70) years of age.

29. Despite Plaintiff's clear and unequivocal communication that she had no intention of retiring, Guthrie consistently and repeatedly inquired about Plaintiff's "impending retirement."

30. In fact, when discussing Plaintiff's calendar year end 2021 written performance evaluation, Guthrie noted that Plaintiff should add information on "succession planning" (i.e., when was she planning on retiring).

31. In or around October or November 2021, Plaintiff applied for a promotion (which is referred to as a "realignment" at the Company), which would have increased her compensation.

32. In response to her application for a promotion, Guthrie advised on or after February 1, 2022, that while he supported her promotion, it was denied because of the "retirement issue." In other words, the Company, through Guthrie and Dancey, refused to promote Plaintiff because they believed she should be retiring. The promotion would have been accompanied with a significant increase in Plaintiff's salary (which would allow for higher monetary increases over time and higher future bonuses).

33. At that time, Plaintiff again told Guthrie that Plaintiff had no plans on retiring and further stated that she found the Company's stated reason for denial (i.e., impending retirement) to be "ethically questionable." Plaintiff made the foregoing statement to Guthrie so he knew Plaintiff was challenging this decision to deny her promotion on ethical and legal grounds. Plaintiff believed Guthrie understood her to be voicing a complaint that Defendants' actions were unlawful.

34. After raising the issue that retirement was not in Plaintiff's plans and a denial for that purpose was unsound/improper, Guthrie had no rebuttal. Instead, Guthrie agreed to work with

Human Resources to progress a promotion for Plaintiff in the following year. At the same time, Guthrie made clear that Plaintiff must still provide the Company with a retirement date.

35. On or about June 13, 2022, Plaintiff had a conversation with Guthrie regarding several projects. At the end of the conversation, Plaintiff asked Guthrie if any progress had been made regarding her promotion. Guthrie thanked Plaintiff for reminding him and said he would follow up with the new Human Resources Director.

36. On June 17, 2022, at 5:22 p.m., Plaintiff sent Guthrie the following email, which is incorporated by reference herein:

> Just want to thank you for agreeing to progress the level realignment for my position, I really do appreciate it.
>
> In February when it was turned down you said the issue was retirement, that I needed to provide you with a date, and I asked for some time to consider. I'm happy to report that I don't have immediate plans to retire and will be happy to continue working as long as I can and at least until I reach 70, which will be in 2028.
>
> Thanks again - please let me know if you need anything further.

37. Guthrie never sent and Plaintiff never received a response to the June 17, 2022 email.

38. On or about August 13, 2022, Plaintiff spoke with Elaine Young ("Young"), IFAC's Human Resources Director, concerning several issues, including the fact that Guthrie denied her promotion because he believed Plaintiff should retire.

39. Plaintiff never heard back from Elaine Young concerning her complaint about the unlawful consideration of and reliance upon Plaintiff's age for purposes of denying the promotion.

40. On or about September 20, 2022, Guthrie and Young asked that Plaintiff attend a virtual meeting, wherein Guthrie informed Plaintiff that she was terminated (hereinafter, the "Termination Call"). Guthrie noted the termination was not about Plaintiff's performance, but was

about allegations regarding Plaintiff's "behavior." At the time of termination, the Company refused to provide any substantive details regarding the so-called "behavioral" issues of a 22-year employee, who had recently complained of unlawful behavior and discrimination.

41. Defendants did, however, advise that the termination was based upon feedback from one or more direct reports to Plaintiff.

42. As a result, of the termination, Plaintiff was treated like a thief, not a twenty-two (22) year trusted employee with an unblemished performance history. Indeed, during the Termination Call, all of Plaintiff's access to emails/computers/files were cut off before the Termination Call even ended. Plaintiff was not able to communicate to colleagues, many of whom were like family, concerning Plaintiff's unceremonious departure.

43. Plaintiff has since learned following her termination that the Company purports to base their decision for her termination on exit-interview representations made by Melody Scales, a direct report, and a subsequent follow-up with Ephraim Wainaina, a direct report. In essence, Defendants allege that Scales and Wainaina did not like Plaintiff's management style/leadership.

44. Defendants utilized feedback from Melody Scales and Ephraim Wainaina as "justification" to exact their discriminatory motivation to terminate Plaintiff based on her age in retaliation for making complaints regarding discrimination. Ironically, IFAC cherished and rewarded Plaintiff's management style/leadership for 22 years. It was only after Defendants wanted to push Plaintiff out that her leadership and management style were suddenly an issue.

45. Dancey and Guthrie had long sought to terminate Plaintiff's employment, as they felt Plaintiff was too old and should retire.

46. Dancey and Guthrie were also upset that Plaintiff made a complaint of discrimination regarding her inability to receive the promotion, resulting in unlawful retaliatory animus.

47. Dancey, Guthrie, and IFAC retaliated against Plaintiff for complaining to Human Resources in August 2022.

48. Dancey and Guthrie, together, made the decision on behalf of IFAC to terminate her employment, using Scales' exit interview as pretext to justify their decision.

49. In reality, Scales sought to leave IFAC so she could obtain a more senior role. Indeed, she was an average employee who was transferred to the Plaintiff's finance department because she was no longer needed in the previous department(s) she worked in at IFAC.

50. Scales had a number of issues with her prior supervisors.

51. In fact, if Plaintiff did not agree to accept Scales into Plaintiff's Finance department, Scales would have been terminated.

### **FIRST CLAIM FOR RELIEF AGAINST DEFENDANT IFAC**
*Disability Discrimination in Violation of the ADEA*

47. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48. The ADEA prohibits discrimination against an employee on the basis of his/her age in regard to discharge, compensation, job training, promotion or other terms, conditions, and privileges of employment.

49. As described above, Defendant IFAC is an employer within the meaning of the ADEA, while Plaintiff is an employee within the meaning of the ADEA.

50. As also described above, Defendant IFAC discriminated against Plaintiff by: (1) refusing to approve the promotion/realignment because of her age, and (2) discharging Plaintiff on the basis of her age.

51. As a direct and proximate result of Defendant IFAC's unlawful discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

52. As a direct and proximate result of Defendant IFAC's unlawful discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

53. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADEA, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
*Disability Discrimination in Violation of the NYSHRL*

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55. NYSHRL prohibits employers, because of an employee's age, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

56. As described above, Defendants discriminated against Plaintiff by: (1) refusing to approve the promotion/realignment because of her age, and (2) discharging Plaintiff on the basis of her age, in violation of the NYSHRL.

57. As also described above, each Defendant is an employer within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

58. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

59. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

**THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
*Disability Discrimination in Violation of the NYCHRL*

60. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. NYCHRL § 8-107 prohibits employers, because of an employee's age, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

62. As described above, Defendants discriminated against Plaintiff by: (1) refusing to approve the promotion/realignment because of her age, and (2) discharging Plaintiff on the basis of her age, in violation of the NYCHRL

63. As also described above, each Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

64. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

65. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

**FORTH CLAIM FOR RELIEF AGAINST DEFENDANT IFAC**
*Retaliation in Violation of the ADEA*

66. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

67. The ADEA prohibits employers from discriminating against an employee because the employee has in good faith opposed any unlawful employment practice under the ADEA.

68. As described above, Defendant IFAC is an employer within the meaning of the ADEA, while Plaintiff is an employee within the meaning of the ADEA.

69. As also described above, after Plaintiff engaged in protected activity by both (1) complaining to Guthrie on or after February 1, 2022, that the decision to refuse the promotion/realignment because of the "retirement issue" was ethically questionable (which she understood him to believe she alleged his decision was both unethical and illegal); and (2) complaining on August 13, 2022, to Elaine Young ("Young"), Human Resources Director, concerning the fact that Guthrie denied her promotion because he believed Plaintiff should retire.

70. In retaliation for the foregoing protected activities, Defendant IFAC retaliated against Plaintiff by terminating her employment.

71. As a direct and proximate result of Defendant IFAC's unlawful retaliatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

72. As a direct and proximate result of Defendant IFAC's unlawful retaliatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

73. Defendant IFAC's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADEA, for which Plaintiff is entitled to an award of punitive damages.

**FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
*Retaliation in Violation of the NYSHRL*

74. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75. The NYSHRL prohibits employers from discriminating against an employee because the employee has in good faith opposed any unlawful employment practice under the NYSHRL.

76. As described above, Defendant IFAC is an employer within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

77. As also described above, after Plaintiff engaged in protected activity by both (1) complaining to Guthrie on or after February 1, 2022, that the decision to refuse the promotion/realignment because of the "retirement issue" was ethically questionable (which she understood him to believe she alleged his decision was both unethical and illegal); and (2)

complaining on August 13, 2022, to Elaine Young ("Young"), Human Resources Director, concerning the fact that Guthrie denied her promotion because he believed Plaintiff should retire.

78. In retaliation for the foregoing protected activities, Defendants retaliated against Plaintiff by terminating her employment.

79. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

80. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

81. Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYCHRL*

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83. NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has in good faith opposed any practice forbidden by the NYCHRL.

84. As described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

85. As also described above, after Plaintiff engaged in activity protected under the NYCHRL, Defendants retaliated against Plaintiff by terminating Plaintiff's employment.

86. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

87. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

88. Defendants' unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

## **DEMAND FOR A JURY TRIAL**

89. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States, New York State laws, and New York City laws;

b. An order granting preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons

acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

  c. An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

  d. An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendants' unlawful conduct;

  e. An award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputation and loss of career fulfillment in connection with Plaintiff's claims;

  f. An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with Plaintiff's claims;

  g. An award of punitive damages to the extent permitted by law, commensurate with Defendants' ability to pay;

  h. An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

  i. An award of pre-judgment and post-judgment interest, as provided by law; and

[INTENTIONALLY OMITTED]

      j.      Granting Plaintiff such other and further relief, including equitable relief, as this Court finds necessary and proper.

Dated: Melville, New York
       January 27, 2023

                                     Respectfully submitted,

                                     STEVENSON MARINO LLP
                                   *Attorneys for Plaintiff*
                                   105 Maxess Road, Suite 124
                                   Melville, NY 11747
                                   Tel.  (212) 939-7228
                                   Fax.  (212) 531-6129

                    By:     __/s/ Justin R. Marino_____
                                   JUSTIN R. MARINO